# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3605 | **DATE** | 11/3/2010 |
| **CASE TITLE** | Camphausen vs. Schweitzer et al | | |

**DOCKET ENTRY TEXT**

The Court grants Defendant Doreen Schweitzer's motion to compel [31] in its entirety.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

     On June 10, 2010, Plaintiff Dan Camphausen, a citizen of Wisconsin, brought the present three-count Complaint against Defendants Doreen Schweitzer and Ronald May, both citizens of Illinois, based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. In his Complaint, Camphausen alleges a slander claim against Schweitzer and libel and invasion of privacy claims against May.[1] Before the Court is Schweitzer's motion to compel pursuant to Federal Rule of Civil Procedure 37(a). For the following reasons, the Court, in its discretion, grants Schweitzer's motion to compel in its entirety. If Camphausen is unaware of any further documents or information in his possession, custody, or control that are responsive to these interrogatories and document requests, Camphausen must provide Schweitzer with an affidavit of completeness.

Continued...

Courtroom Deputy    KF

---

[1] "Although the common law originally distinguished between spoken and written defamation (slander and libel, respectively), in Illinois the same standard applies whether an allegedly defamatory statement is spoken or written." *Thomas v. Fuerst,* 345 Ill.App.3d 929, 933-934, 281 Ill.Dec. 215, 803 N.E.2d 619 (Ill. 2004).

## LEGAL STANDARD

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish,* 235 F.R.D. at 450. In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dept.,* 535 F.2d 621, 629 (7th Cir. 2008); *Reynolds v. Jamison,* 488 F.3d 756, 761 (7th Cir. 2007).

## BACKGROUND

In his Complaint, Camphausen alleges that from July 2007 through January 2009 he was a registered representative of the securities brokerage firm Interocean Securities, LLC, located in Chicago, Illinois. (R. 1, Compl. ¶ 1.) Camphausen further alleges that May is the owner, writer, and editor of "The May Report," which is an online periodical that covers local Chicago media, "key high tech players, local high tech organizations, and the players in the infrastructure like the lawyers, accountants, consultants, financing people, and more." (*Id.* ¶ 3.)

From March 2002 through July 2007, prior to his affiliation with Interocean Securities, Camphausen alleges that he was a registered representative of the securities brokerage firm Advanced Equities, Inc. in Chicago, Illinois. (*Id.* ¶ 6.) Camphausen also alleges that prior to that time period, he was a registered representative of CIBC World Markets Corporation. (*Id.*)

For several years until 2005, Camphausen states that he was the registered representative for Schweitzer's investment account and that Schweitzer's former husband introduced her to Camphausen. (*Id.* ¶ 7.) During Schweitzer's divorce, Camphausen alleges that Schweitzer developed hostility towards him. (*Id.* ¶ 8.) Camphausen also alleges that during 2005 a registered representative of Merrill Lynch solicited Schweitzer and her daughter to transfer their investment accounts to Merrill Lynch. (*Id.* ¶ 9.) Thereafter, Camphausen filed an arbitration action against Merrill Lynch arising out of this solicitation, which the parties eventually settled. (*Id.* ¶ 10.)

Camphausen further maintains that on or about February 9, 2010, Schweitzer telephoned May and falsely told him that Camphausen threatened the registered representative at Merrill Lynch by stating "You might end up in the bottom of the river." (*Id.* ¶ 11.) Camphausen further states that Schweitzer's motivation in making these statements was her long-standing animus towards Camphausen as her ex-husband's broker. (*Id.* ¶ 17.) On February 20, 2010, May published information about his telephone conversation with Schweitzer, including that Camphausen threatened the Merrill Lynch representative stating "You might end up in the bottom of the river." (*Id.* ¶ 12, Ex. 1, "The May Report".) Based on these allegations, Camphausen seeks compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $3,000,000 for each claim. In relation to his claim against Schweitzer, Camphausen alleges that "[a]s a direct and proximate result of the statements set forth above, Camphausen has incurred serious damage to his reputation and standing in the community which, in addition to adversely affecting his business prospects, is causing him needless anguish, embarrassment and humiliation. (*Id.* ¶ 18.)

## PROCEDURAL BACKGROUND

On July 16, 2010, Schweitzer served Camphausen with her first set of written interrogatories and requests for the production of documents. On July 27, 2010, Schweitzer served Camphausen with her second set of interrogatories and requests for the production of documents. On August 19, 2010, Camphausen tendered his responses to the written discovery requests. Schweitzer maintains that Camphausen's responses were inadequate, and thus counsel conferred in an attempt to resolve the parties' differences. Schweitzer further maintains that although the Local Rule 37.2 conference was fruitful, certain discovery disputes remain that are essential to her defense in this lawsuit.

## ANALYSIS

Camphausen brought this lawsuit against Schweitzer for defamation per se. "To make out a defamation claim under Illinois law, the plaintiff must show 'that the defendant [ ] made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff.'" *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.,* 381 F.3d 717, 726 (7th Cir. 2004) (citation omitted); *see also Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009) ("Defamation is the publication of a false statement that 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'") (citation omitted). "Illinois courts have recognized four categories of statements that are considered defamatory per se: (1) words that impute the commission of a crime; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or a want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." *Republic Tobacco Co.,* 381 F.3d at 726; *see also Lott,* 556 F.3d at 568. If a statement is defamation per se, a plaintiff need not demonstrate actual damages to reputation because "statements that fall within these *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to its reputation may be presumed." *Republic Tobacco,* 381 F.3d at 726. "Although a statement may fit into one of these [per se] categories, this fact, standing alone, 'has no bearing on whether the alleged defamatory statement is actionable, because certain factors may render defamatory statements non-actionable as a matter of law.'" *Giant Screen Sports v. Canadian Imperial Bank of Commerce,* 553 F.3d 527, 532 (7th Cir. 2009) (citation omitted).

### I.     Camphausen's Reputation

In her requests, Schweitzer seeks discovery concerning Camphausen's prior misconduct, former employers, an explanation of how Camphausen's reputation has been altered since the alleged misconduct, the identities of people who informed Camphausen about the false statements, and the identities of individuals who told Camphausen that their opinions of him have changed. In response to Schweitzer's discovery requests, Camphausen argues that because he has alleged defamation per se, there is a presumption that his reputation has been injured, and thus any such information is inadmissible. In support of his argument, Camphausen cites to an Illinois case from 1858 arguing that under Illinois law, evidence of his prior acts, such as his involvement in prior litigation or misconduct, is not admissible. *See Sheahan v. Collins,* 20 Ill. 325, 1858 WL 6083, at *4 (Ill. 1858). In addition, Camphausen maintains that any reputation evidence offered by a defendant in mitigation may not be admissible under certain circumstances. *See, e.g., Desnick v. American Broad, Co., Inc.,* 44 F.3d 1345, 1350 (7th Cir. 1995).

The pertinent question during discovery, however, is not whether the information is admissible evidence, but whether the information is relevant – as clearly articulated by the controlling federal rule: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Courts construe Rule 26(b)(1) "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Moreover, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Id.*

Accordingly, Camphausen's arguments concerning discovery related to his prior misconduct, former employers, reputation, and identities of individuals who informed him of his changed reputation and the false statements in the first instance are unavailing because this information could lead to the discovery of admissible evidence, especially "because certain factors may render defamatory statements non-actionable as a matter of law." *Giant Screen Sports,* 553 F.3d at 532 (quotation mark omitted); *see also Sloan v. Hatton,* 66 Ill.App.3d 41, 43, 22 Ill. Dec. 783, 383 N.E.2d 259 (Ill. 1978) (defamation does not occur in a vacuum). Moreover, any such evidence may be admissible for impeachment purposes. *See* Fed.R.Evid. 608(b). Therefore, the Court grants Schweitzer's motion to compel regarding these requests.

## II. Economic Information

Next, Camphausen argues that he should not be compelled to produce his income tax returns because their contents are not at issue. To clarify, in Schweitzer's First Set of Document Requests, Request No. 11, Schweitzer asks for copies of Camphausen's federal and state income tax returns from 2000 until the present. (*See* Ex. B, Request No. 11.) Because Camphausen alleges that Schweitzer's conduct "adversely affect[ed] his business prospects," his economic losses are at issue in this lawsuit. (*See* Compl. ¶ 18.) Moreover, although damages are presumed in defamation per se cases, the amount of damages is an evidentiary issue. *See Knight v. Chicago Tribune Co.,* 385 Ill.App.3d 347, 351, 324 Ill.Dec. 292, 895 N.E.2d 1007 (Ill. 2008). Put differently, Camphausen's argument that the $1,000,000 in compensatory damages he seeks is presumed necessarily fails because substantial damages cannot be presumed under Illinois law. *See Republic,* 381 F.3d at 734; *see also Dail v. Adamson,* 212 Ill.App.3d 66, 69, 156 Ill.Dec. 445, 570 N.E.2d 1167 (Ill. 1991) ("while nominal damages are presumed, substantial damages are not so presumed"). Therefore, Schweitzer's discovery requests regarding Camphausen's tax returns and other information concerning his economic losses – such as his employment history, prospective clients, and business prospects – appear reasonably calculated to lead to the discovery of admissible evidence concerning Camphausen's compensatory damages. As such, the Court grants Schweitzer's motion to compel in this regard.

## III. Services Related to Schweitzer's Brokerage Account

Furthermore, Camphausen maintains that his former services related to Schweitzer's brokerage account, including information regarding his conversations with Schweitzer, have no bearing on his defamation per se claim against Schweitzer. Camphausen, however, seeks $3,000,000 in punitive damages against Schweitzer, and thus information about Schweitzer's malice is at issue in this lawsuit. *See Mullen v. Solber,* 271 Ill.App.3d 442, 208 Ill.Dec. 28, 648 N.E.2d 950 (Ill. 1995). More specifically, although punitive damages awards in private defamation per se claims are not dependent on the plaintiff establishing actual malice, Schweitzer may present "facts tending to show that there was no actual malice" in "mitigation of the damages," even though "evidence of such facts can not have the effect of withdrawing the question of exemplary damages from the jury." *See id.* at 444-45 (citation omitted). Because Schweitzer seeks information that may lead to the discovery of evidence that would disprove malice, the parties' previous communications are relevant to this lawsuit. The Court thereby grants Schweitzer's motion to compel as to information regarding Camphausen's services related to Schweitzer's brokerage account.

## IV. Number of Interrogatories

Finally, Camphausen argues that Schweitzer served over 25 interrogatories in violation of Rule 33(a)(1). Not only did Schweitzer served only 23 straight-forward interrogatories, Schweitzer's counsel maintains that the attorneys discussed this issue during their Local Rule 37.2 conference and Camphausen's counsel stated that this objection did not affect the substance of his client's discovery responses. Because Camphausen's objection did not affect his discovery responses, he has failed in his burden of establishing why Schweitzer's 23 interrogatories are improper under the circumstances. *See Kodish,* 235 F.R.D. at 450.