IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAN CAMPHAUSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 C 3605 |
| v. ) | |
| ) | |
| DOREEN SCHWEITZER and ) | |
| RONALD MAY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 10, 2010, Plaintiff Dan Camphausen brought a three-count Complaint against Defendants Doreen Schweitzer and Ronald May based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). In his Complaint, Camphausen alleges a defamation claim against Schweitzer (Count I) and defamation and invasion of privacy claims against May (Counts II and III). Before the Court is Schweitzer's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the following reasons, the Court grants Schweitzer's motion and dismisses this lawsuit in its entirety against Defendants Schweitzer and May.

## BACKGROUND

Doreen Schweitzer was married to Steve Schweitzer from 1975 until 2001. (R. 60, Def.'s Rule 56.1 Stmt. Facts ¶ 13.) In or about 2001, Steve Schweitzer became a client of Camphausen, who was employed by Advanced Equities, Inc. ("AEI"). (*Id.* ¶ 14.) During this

---

[1] May, who is proceeding pro se, filed a summary judgment memorandum and a reply brief, but did not file an actual motion for summary judgment or any Northern District of Illinois Local Rule 56.1 Statements. The Court nevertheless considered May's arguments in the context of Schweitzer's summary judgment motion.

time, Doreen Schweitzer also utilized Camphausen's brokerage services. (*Id.* ¶ 15.) The Schweitzers divorced in 2001, at which time Doreen Schweitzer (hereinafter "Schweitzer") continued to use Camphausen's brokerage services. (*Id.* ¶ 16.)

In 2005, Schweitzer began to question the profitability of her brokerage account and asked Camphausen for documentation about her account. (*Id.* ¶ 17.) Schweitzer and Camphausen engaged in communications concerning this issue, including one conversation that occurred on or around November 14, 2005 (the "November 2005 Conversation"). (*Id.* ¶ 18.) During the November 2005 Conversation, Schweitzer and Camphausen discussed the fact that Schweitzer was thinking about moving her account to a Merrill Lynch broker named Nick Photiadis because Photiadis told her she was losing money with Camphausen. (*Id.* ¶¶ 19, 20.) During their conversation, Camphausen told Schweitzer that Photiadis was wrong about Schweitzer losing money and told her to look at her brokerage reports to fully understand how her accounts were performing. (*Id.* ¶ 21.)

Meanwhile, Camphausen agrees that he had a problem with Photiadis and that he was insulted by the comments Photiadis and Merrill Lynch made about his trading practices. (*Id.* ¶¶ 25, 26.) Camphausen also agrees that he criticized Photiadis and made negative comments about Photiadis during his November 2005 conversation with Schweitzer. (*Id.* ¶ 28.) Camphausen, however, denies that he made a specific statement about Photiadis ending up at the "bottom of a river" during the November 2005 conversation. (*Id.* ¶¶ 29, 35; R. 65, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 20, 21.) In December 2005, Schweitzer transferred her account to Merrill Lynch. (*Id.* ¶ 38; Pl.'s Stmt. Facts ¶ 5.)

Five years later, a group of former AEI customers – all of whom had been clients of

Camphausen – initiated an arbitration related to alleged violations of federal and state securities laws in relation to investment funds in Alien Technologies (the "Alien Technologies Arbitration"). (Def.'s Stmt. Facts ¶¶ 39, 40.) Schweitzer, who was not an original plaintiff in the Alien Technologies Arbitration, was considering whether she wanted to become involved in it. (*Id.* ¶ 40.) Consequently, Schweitzer spoke to an attorney named William Anthony to gather more information about the Alien Technologies Arbitration. (*Id.* ¶ 41.) Anthony directed Schweitzer to an online newsletter known as "The May Report," which covered stories about Chicago technology. (*Id.* ¶ 42; Def.'s Ex. G, 2/12/10 May Report.)

On or about February 9, 2010, Schweitzer visited the "The May Report" website, but she was unable to navigate the website, so she contacted May, the publisher of "The May Report" by telephone. (*Id.* ¶ 43.) In that conversation, Schweitzer told May that Camphausen had made several comments about Photiadis including a statement about Photiadis ending up at the "bottom of the river." (*Id.* ¶ 46; Pl.'s Stmt. Facts ¶ 11.) After May spoke with Schweitzer, he published an edition of "The May Report" on or about February 12, 2010 that stated in part:

> Doreen said that Dan Camphausen supposedly threatened the Merrill guy with unthinkable things like "You might end up in the bottom of the river." The issue was defamation by the ML guy and loss of the trust of his clients by Dan. I must tell you that in the early days of my looking into AEI, I had a few conversations with anonymous people, presumably AEI brokers which went along the same lines. It may just be a reflection of the wild and woolly world of trading and brokering.

(Def.'s Stmt. Facts ¶ 60; Pl.'s Stmt. Facts ¶¶ 12, 17.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

In his Complaint, Camphausen alleges that the statement attributed to him in "The May Report" is defamatory because it imputes the commission of a criminal offense. (R. 1, Compl. ¶¶ 16, 22.)[2] To establish a defamation claim under Illinois law, "a plaintiff must present facts that a defendant made a false statement about a plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Seith v. Chicago Sun-Times, Inc.,* 371 Ill.App.3d 124, 134, 308 Ill.Dec. 552, 861 N.E.2d 1117 (1st Dist. 2007); *see also Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009) ("Defamation is the publication of a false statement that 'tends to harm a person's reputation to the extent that it lowers that

---

[2] In his Complaint, Camphausen also alleges that the statement imputes a want of integrity in the discharge of his professional and employment duties. (Compl. ¶¶ 16, 22.) Camphausen, however, fails to make any such arguments in response to the present summary judgment motion, and thus has abandoned this claim. *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any discussion legal brief amounts to abandonment of claim).

4

person in the eyes of the community or deters others from associating with that person.'") (citation omitted). Under Camphausen's theory of liability, Schweitzer is liable because she made the false statement to May and May is liable for authoring an article containing the false statement and then publishing the article in "The May Report." *See Roehrborn v. Lambert,* 277 Ill.App.3d 181, 184, 213 Ill.Dec. 923, 660 N.E.2d 180 (1st Dist. 1995) ("'publication' in defamation requires only that the matter be communicated to a third person"); *Brennan v. Kadner,* 351 Ill.App.3d 963, 970, 286 Ill.Dec. 725, 814 N.E.2d 951 (1st Dist. 2004) ("The republisher of a defamatory statement made by another is himself liable for defamation even if he gives the originator's name"). "Illinois courts have recognized four categories of statements that are considered defamatory per se: (1) words that impute the commission of a crime; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or a want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.,* 381 F.3d 717, 726 (7th Cir. 2004); *see also Lott,* 556 F.3d at 568. If a statement is defamation per se, a plaintiff need not demonstrate actual damages to reputation because "statements that fall within these per se categories are thought to be so obviously and materially harmful to the plaintiff that injury to its reputation may be presumed." *Republic Tobacco,* 381 F.3d at 726.

"Although a statement may fit into one of these [per se] categories, this fact, standing alone, 'has no bearing on whether the alleged defamatory statement is actionable, because certain factors may render defamatory statements non-actionable as a matter of law.'" *Giant Screen Sports v. Canadian Imperial Bank of Commerce,* 553 F.3d 527, 532 (7th Cir. 2009)

5

(citation omitted). One of these factors includes the innocent construction rule. *See Lott,* 556 F.3d at 568 ("a statement that is reasonably capable of an innocent construction is not per se defamatory"). "Whether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Madison,* 539 F.3d at 654. Under Illinois' innocent construction rule, a "statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions." *Green v. Rogers,* 234 Ill.2d 478, 500, 334 Ill.Dec. 624, 917 N.E.2d 450 (Ill. 2009) (citation omitted); *see also Pope v. Chronicle Publ'n Co.,* 95 F.3d 607, 613 (7th Cir. 1996) (the "court is not to balance reasonable constructions, nor is it necessary to conclude that the statement *cannot* be construed in a defamatory way.") (emphasis in original). The innocent construction rule "requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Madison v. Frazier,* 539 F.3d 646, 653-54 (7th Cir. 2008) (quoting *Solaia Tech., LLC v. Speciality Publ'g Co.,* 221 Ill.2d 558, 304 Ill.Dec. 369, 852 N.E.2d 825, 839 (2006)). Courts "are to interpret the words of the statement as they appear to have been used and according to the idea they were intended to convey to a reader of reasonable intelligence." *Seith,* 371 Ill.App.3d at 135

Here, Camphausen maintains that the comment attributed to him in "The May Report," namely, that he threatened the "Merrill guy" by saying "you might end up in the bottom of the river" is a death threat, which imputes a commission of a crime. Schweitzer, on the other hand, argues that "this statement is reasonably capable of being interpreted to mean that Camphausen made a rhetorical or colloquial comment out of frustration rather than an actual threat to kill someone and place his body at the bottom of a river." (R. 59, Schweitzer Mem., at 11.) May

argues that the comment was not a death threat, but that Camphausen was just "trash talking." (R. 63, May Mem., at 1.)

Based on the context of this statement in May's on-line newsletter discussing AEI and Merrill Lynch brokers, the reasonably intelligent reader would understand this statement to be an expression of frustration and bravado in the high stakes-world of brokerage firms, especially in light of May's comment that the alleged threat "may just be a reflection of the wild and woolly world of trading and brokering." And, even if a reasonable reader construed this statement as a death threat – as Camphausen asserts – under Illinois law, "if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Muzikowski v. Paramount Pictures Corp.,* 477 F.3d 899, 904 (7th Cir. 2007). In other words, Illinois law "prevents a case from getting to the jury if there is any possible reasonable innocent interpretation of the language." *Chicago City Day School v. Wade,* 297 Ill.App.3d 465, 471, 231 Ill.Dec. 835, 697 N.E.2d 389 (1st Dist. 1998). Thus, Camphausen's defamation per se claims against both Schweitzer and May fail.

On a final note, because Camphausen's invasion of privacy claim against May is based on May's statement made in "The May Report," Camphausen's false light claim against May in Count III also fails. *See Madison,* 539 F.3d at 659; *Muzikowski,* 477 F.3d at 907; *Seith,* 371 Ill.App.3d at 139.

## CONCLUSION

For the these reasons, the Court grants Defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56 and dismisses this lawsuit in its entirety.

**Date:** September 27, 2011

                                    **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**